1

2

3

4

The Hon. Chief Judge Ricardo S. Martinez

5

6

7

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

8

9

10

11

12

13

14

15

16

ALAN BRAHAMSHA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

STARBUCKS CORPORATION, a Washington corporation,

Defendant.

No. C16-1667 RSM

**PLAINTIFF'S OPPOSITION TO DEFENDANT STARBUCKS CORPORATION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

NOTE ON MOTION CALENDAR: Friday, December 23, 2016

ORAL ARGUMENT REQUESTED

17

18

19

20

21

22

23

24

25

26

P'S OPP. TO MOT. TO DISMISS
No. C16-1667 RSM

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................1

BACKGROUND .........................................................................................................2

ARGUMENT ..............................................................................................................3

    I.    Starbucks's Presentation of Illegal Provisions to Hundreds of Thousands of
New Jersey Residents is Governed by New Jersey Law .........................................4

        A.    New Jersey has a fundamental public policy in protecting
TCCWNA Rights .........................................................................................4

            1.    Application of Washington Law Would Deprive the Entire
New Jersey Class of the Relief TCWNNA Was Enacted to
Afford Them ......................................................................................6

            2.    Application of Washington Law Would Waive New Jersey
Citizens' Substantive Rights Through an Adhesion Contract .........9

            3.    The Cases Cited by Starbucks Require No Different Result ..........9

        B.    New Jersey has a materially greater interest in this action than
Washington .................................................................................................10

        C.    The Court should apply New Jersey law under a basic choice-of-law
analysis ......................................................................................................12

    II.    Starbucks' Terms of Use are Governed by TCCWNA .........................................13

        A.    Plaintiff is a "consumer" and entered into a "consumer contract" ...........14

        B.    Plaintiff is an "aggrieved consumer" .......................................................16

CONCLUSION ...........................................................................................................21

**LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

# TABLE OF AUTHORITIES

**United States Supreme Court**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................3

*Atl. Marine Const. Co. v. U.S. Dist. Court for W.D. Tex.*,
    134 S. Ct. 568 (2013)..........................................................................................4

*Marbury v. Madison*,
    5 U.S. 137 (1803)..............................................................................................18

**United States Courts of Appeals**

*Bloom v. Barry*,
    755 F.2d 356 (3d Cir. 1985)..............................................................................20

*Doe 1 v. AOL LLC*, 552 F.3d 1077
    (9th Cir. 2009)....................................................................................................5

*Johnson v. Lucent Tech. Inc.*,
    653 F.3d 1000 (9th Cir. 2011) ...........................................................................3

*Johnson v. Wynn's Extended Care, Inc.*,
    635 F. App'x 59 (3d Cir. 2015) .......................................................................15

*Lebegern v. Forman*,
    471 F.3d 424 (3d Cir. 2006)..............................................................................13

*Schunkewitz v. Prudential Sec. Inc.*,
    99 F. App'x 353 (3d Cir. 2004) .......................................................................10

*Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*,
    386 F.3d 581 (4th Cir. 2004) .............................................................................5

*Watkins v. DineEquity, Inc.*,
    591 F. App'x 132 (3d Cir. 2014) .....................................................................13

*Wright-Moore Corp. v. Ricoh Corp.*,
    908 F.2d 128 (7th Cir. 1990) .............................................................................5

**United States District Courts**

*Barows v. Chase Manhattan Mortg. Corp.*,
    465 F. Supp. 2d 347 (D.N.J. 2006) .......................................................15, 16, 17

P'S OPP. TO MOT. TO DISMISS
No. C16-1667 RSM

- ii -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

*Bryant v. Wyeth*,
  879 F. Supp. 2d 1214 (W.D. Wash. 2012)..................................................................10-11

*Bus. Incentives Co. v. Sony Corp. of Am.*,
  397 F. Supp. 63 (S.D.N.Y. 1975) ....................................................................................4

*Crozier v. Johnson & Johnson Consumer Companies, Inc.*,
  901 F. Supp. 2d 494 (D.N.J. 2012) .................................................................................7

*Gomez v. Extra Space Storage, Inc.*,
  No. CIV. 13-0929, 2015 WL 1472263 (D.N.J. Mar. 31, 2015)........................................19

*In re Facebook Biometric Info. Privacy Litig.*,
  No. 15-cv-03747, 2016 WL 2593853 (N.D. Cal. May 5, 2016)........................................12

*Karpenski v. Am. Gen. Life Companies, LLC*,
  999 F. Supp. 2d 1218 (W.D. Wash. 2014)........................................................................10

*Kendall v. Cubesmart L.P.*,
  No. CV156098, 2016 WL 1597245 (D.N.J. Apr. 21, 2016)...........................13, 14, 15, 18

*Khoday v. Symantec Corp.*,
  No. CIV. 11-180, 2014 WL 1281600 (D. Minn. Mar. 13, 2014) ......................................7

*Kwan v. Clearwire Corp.*,
  No. C09-1392, 2012 WL 32380 (W.D. Wash. Jan. 3, 2012)............................................11

*Martinez-Santiago v. Pub. Storage*,
  38 F. Supp. 3d 500 (D.N.J. 2014) ..............................................................................18, 19

*McGarvey v. Penske Automotive Grp., Inc.*,
  639 F. Supp. 2d 450 (D.N.J. 2009) ................................................................................17

*Millett v. Truelink, Inc.*,
  Civ. No. 05–599, 2006 WL 2583100 (D. Del. Sept. 7, 2006) ...........................................8

*Mocek v. AllSaints USA Ltd.*,
  No. 16-cv-8484 (N.D. Ill. Dec. 7, 2016).........................................................................20

*Networld Comm'n, Corp. v. Croatia Airlines, D.D.*,
  No. 13-cv-4770, 2014 WL 4662223 (D.N.J. Sept. 18, 2015).............................................6

*Ostreicher v. Alienware Corp.*,
  502 F. Supp. 2d 1061 (N.D. Cal. 2007) ..........................................................................11

P'S OPP. TO MOT. TO DISMISS
No. C16-1667 RSM

- iii -

**LAW OFFICES OF**
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

*Paniagua Grp., Inc. v. Hosp. Specialists, LLC,*
    No. 11-6003, 2016 WL 1725934 (D.N.J. Apr. 28, 2016)....................................................13

*Riensche v. Cingular Wireless, LLC,*
    No. C06-1325, 2006 WL 3827477 (W.D. Wash. Dec. 27, 2006).......................................9

*Russell v. Croscill Home, LLC,*
    No. 16-1190(PGS) (D.N.J. Oct. 11, 2016)................................................................... 19-20

*Savetsky v. Pre-Paid Legal Servs., Inc.,*
    No. 14-cv-3514, 2015 WL 4593744 (N.D. Cal. July 30, 2015) ........................................11

*Shah v. Am. Express Co.,*
    No. 09-622, 2009 WL 3234594 (D.N.J. Sept. 30, 2009)...................................................15

*Thornell v. Seattle Serv. Bureau, Inc.,*
    No. 14-cv-1601, 2016 WL 3227954 (W.D. Wash. June 13, 2016) ...........................10, 12

*Walter v. Hughes Commc'ns, Inc.,*
    682 F. Supp. 2d 1031 (N.D. Cal. 2010) ..........................................................................8

*Wenger v. Bob's Disc. Furniture, Inc.,*
    No. 14-7707, 15-1826 (D.N.J. Feb. 29, 2016) ................................................................20

**State Courts**

*Carfaro v. Blue Haven Pools Ne., Inc.,*
    No. A-2803-13T3, 2015 WL 1980705 (N.J. Super. Ct. App. Div. May 5, 2015) .......... 8-9

*Erwin v. Cotter Health Centers,*
    161 Wash. 2d 676 (2007)................................................................................................10

*Gamble v. Connolly,*
    399 N.J. Super. 130 (Law. Div. 2007) ............................................................................6

*Gandee v. LDL Freedom Enterprises, Inc.,*
    176 Wash. 2d 598 (2013)................................................................................................9

*Gonzalez v. Wilshire Credit Corp.,*
    207 N.J. 557 (2011) ........................................................................................................7

*Greenberg v. Mahwah Sales and Service, Inc.,*
    2016 WL 193485 (N.J. Super. L. Jan. 8, 2016) ..............................................................16

*Johnson v. Spider Staging Corp.,*
    87 Wash. 2d 577 (1976)..................................................................................................12

**LAW OFFICES OF**
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

*Kammerer v. Western Gear Corp.*,
    96 Wash. 2d 416 (1981) ............................................................................10, 12

*Kubis & Perszyk Associates, Inc. v. Sun Microsystems, Inc.*,
    146 N.J. 176 (1996) ........................................................................................8

*McKee v. AT & T Corp.*,
    164 Wash. 2d 372 (2008) ......................................................................7, 8, 11

*New Jersey Dental Ass'n v. Metro. Life Ins. Co.*,
    424 N.J. Super. 160 (App. Div. 2012) ...........................................................6

*Param Petroleum Corp. v. Commerce & Indus. Ins. Co.*,
    296 N.J. Super. 164 (App. Div. 1997) ...........................................................8

*Shelton v. Restaurant.com*,
    214 N.J. 491 (2013) ...............................................................................5, 7, 15

*Stelluti v. Casapenn Enterprises, LLC*,
    203 N.J. 286 (2010) .......................................................................................18

*United Consumer Fin. Services Co. v. Carbo*,
    410 N.J. Super. 280 (App. Div. 2009) .........................................................15

*Vasquez v. Glassboro Serv. Ass'n, Inc.*,
    83 N.J. 86 (1980) ............................................................................................4

*Walters v. Dream Cars Nat'l, LLC*,
    No. BER-L-9571-14, 2016 WL 890783 (N.J. Super. L. Mar. 7, 2016) ................... *passim*

**Rules and Statutes**

28 U.S.C. § 1447 ...............................................................................................20

2016 New Jersey S.B. 2785, 217th Leg., 1st Ann. Sess. (2016),
    https://legiscan.com/NJ/text/S2785/id/1433965 ...........................................17

Truth-in-Consumer Contract, Warranty, and Notice Act, N.J.S. § 56:12-14, *et seq.* ............ *passim*

**Miscellaneous Authorities:**

*Company Information*, Starbucks.com, https://www.starbucks.com/about-us/
    company-information (last visited on December 12, 16) ...................................2

*Find a Store*, Starbucks.com, *available at* https://www.starbucks.com/store-
    locator?map=40.318829,-74.00669,7z (last visited December 12, 16) .............................1

P'S OPP. TO MOT. TO DISMISS
No. C16-1667 RSM

– v –

**LAW OFFICES OF**
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

*Starbucks Company Profile*, Starbucks.com https://www.starbucks.com/about-us/company-information/starbucks-company-profile (last visited on December 12, 16) .........................2

Restatement (Second) of Conflict of Laws § 187 ....................................................................4, 12

Restatement (Second) of Conflict of Laws § 188 ........................................................................13

P'S OPP. TO MOT. TO DISMISS
No. C16-1667 RSM

- vi -

**LAW OFFICES OF**
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074
Tel  (425) 868-7813 • Fax  (425) 732-3752

**INTRODUCTION**

In 1981, a concerned New Jersey Legislature passed a law protecting consumers from deceptive and oppressive terms in contracts, warranties, and notices. Truth-in-Consumer Contract, Warranty, and Notice Act, N.J.S. § 56:12-14, *et seq.* ("TCCWNA"). The law forbids private corporations from including provisions which violate the rights of consumers. *Id.*

Thirty-five years later, Defendant Starbucks Corporation includes numerous provisions in the terms of use for its mobile application (the "Application") that violate TCCWNA. In response to these unlawful provisions, Plaintiff Alan Brahamsha brought an action on behalf of himself and thousands of other New Jersey residents who were presented with and required to accept the terms.

In moving to dismiss, Starbucks, which operates more than fifty stores in New Jersey,[1] raises two fatally flawed arguments.

First, Starbucks argues that a Washington choice-of-law clause included in the terms of use—which New Jersey residents could not negotiate or sever—waives all of the class's rights under TCCWNA. That argument fails because (1) New Jersey has a fundamental public policy protecting consumers against corporate giants like Starbucks, (2) TCCWNA expressly states that its protections cannot be waived, and (2) New Jersey—where the contracts were entered into, the unlawful conduct occurred, and the harm resulted—has a far greater interest in protecting its tens of thousands of citizens than Washington, whose only tie to the underlying action is Starbucks's incorporation and headquarters.

Second, the plain language of TCCWNA provides a private right of action to all

---

[1]     *Find a Store*, Starbucks.com, *available at* https://www.starbucks.com/store-locator?map=40.318829,-74.00669,7z (last visited December 12, 16).

**LAW OFFICES OF**
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074
Tel  (425) 868-7813 • Fax  (425) 732-3752

individuals who were offered a contract that violates the statute. Nevertheless, Starbucks argues that Brahamsha is not a "consumer" and the terms he agreed to were not a "consumer contract" because he did not purchase the Application (which is not required) and does not allege that he used the Application to purchase anything from Starbucks (which is inaccurate). Starbucks also argues that Brahamsha cannot bring a cause of action because he was not "aggrieved"—i.e., suffered any monetary damages—as a result of its violation. But New Jersey law is clear that an individual need not suffer actual damages in order to recover under TCCWNA.

For these reasons and as discussed in detail below, Brahamsha respectfully requests that the Court deny Defendant's motion to dismiss.

## BACKGROUND

Starbucks is a Washington corporation that sells high-quality, whole-bean coffee, tea, pastries, and other treats in its retail coffee shops.[2] Starbucks has more than 24,000 retail stores in seventy countries, with more than fifty retail stores in New Jersey alone.[3]

Brahamsha is a New Jersey resident who downloaded and used the Starbucks Application. In order to use the Application, Brahamsha had to create an account and agree to the Application's non-negotiable terms of use (dkt. 1-1, at ¶¶ 21, 35) which, among other things, (i) absolve Starbucks of all liability without making any exceptions for negligent, reckless, knowing, fraudulent, or intentional injuries, in contravention of New Jersey law; (ii) limit consumers to the "sole remedy" of ceasing use of the Application; and (iii) state that some jurisdictions do not apply these limitations without stating which limitations are applicable to

---

[2]     *Company Information*, Starbucks.com, https://www.starbucks.com/about-us/company-information (last visited on December 12, 16).

[3]     *Starbucks Company Profile*, Starbucks.com, https://www.starbucks.com/about-us/company-information/starbucks-company-profile (last visited on December 12, 16).

P'S OPP. TO MOT. TO DISMISS
No. C16-1667 RSM

- 2 -

**LAW OFFICES OF**
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

New Jersey consumers.

Brahamsha alleges that these provisions (among others) violate Sections 15 and 16 of TCCWNA, and that he and the putative class are therefore entitled to relief under Section 17. Section 15 of TCCWNA prohibits a

> [s]eller, lessor, creditor, lender or bailee…in the course of his business [to] offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J.S. § 56:12-15. Section 16 provides that

> [n]o consumer contract, warranty, notice or sign, as provided for in this act, shall contain any provision by which the consumer waives his rights under this act. Any such provision shall be null and void.

N.J.S.A. § 56:12-16. It also provides that

> [n]o consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable *in some jurisdictions* without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey; provided, however, that this shall not apply to warranties.

*Id*. Lastly, Section 17 requires that

> any person who violates this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both. . . .

N.J.S.A. § 56:12-17.

## ARGUMENT

"On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Johnson v. Lucent Tech. Inc.*, 653 F.3d 1000,

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

1010 (9th Cir. 2011). Dismissal is improper when a court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Here, Starbucks makes two primary arguments, both of which should be resolved in Brahamsha's favor: (i) Starbucks is immune from violations of New Jersey statutes because of the Washington choice-of-law clause in its terms of use; and (2) even if New Jersey law applies, Brahamsha failed to state a claim under TCCWNA. For the reasons described below, the Court can "draw the reasonable inference that [Starbucks] is liable for the misconduct alleged," *id.*, and Defendant's motion must fail.

## I. Starbucks' Presentation of Illegal Provisions to Tens of Thousands of New Jersey Residents Is Governed by New Jersey Law.

As an initial matter, Starbucks argues that TCCWNA cannot apply in light of Starbucks's Washington choice-of-law clause. (Mot. at 6.) That is wrong.[4]

Generally, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless . . . application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." *See* Restatement (Second) of Conflict of Laws § 187(2)(b).

New Jersey's fundamental public policy protects its citizens' unwaivable consumer rights

---

[4]     "A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits . . . [h]owever . . . an exception to that principle for § 1404(a) transfers, require[es] that the state law applicable in the original court also apply in the transferee court." *Atl. Marine Const. Co. v. U.S. Dist. Court for W.D. Tex.*, 134 S. Ct. 568, 582 (2013). The Parties agreed to transfer the case upon Defendant's request, not because of its choice-of-law clause, so a New Jersey choice-of-law analysis would apply. Here, however, New Jersey and Washington both use the Restatement (Second) of Conflicts of Laws § 187.

P'S OPP. TO MOT. TO DISMISS
No. C16-1667 RSM

- 4 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

1   (which application of Washington law would not recognize), and its interest in protecting tens of

2   thousands of New Jersey citizens' claims is materially greater than Washington's interest here.

3   As a result, Starbucks' choice-of-law argument must be rejected.

4       **A.**    **New Jersey has a fundamental public policy in protecting TCCWNA rights.**

5       Generally speaking, New Jersey has established a "strong public policy—enunciated both

6   by its courts and its legislature—in favor of protecting the relatively powerless consumer or

7   small businessman from more powerful commercial giants. . . . " *Bus. Incentives Co. v. Sony*

8   *Corp. of Am.*, 397 F. Supp. 63, 67 (S.D.N.Y. 1975); *see also Vasquez v. Glassboro Serv. Ass'n,*

9   *Inc.*, 83 N.J. 86, 98 (1980) (recognizing that the public policy of New Jersey is found in "federal

10  and state legislation and judicial decisions.").

11      This strong public policy is especially present in TCCWNA. In particular, in enacting

12  TCCWNA, the legislature stated that "[f]ar too many consumer contracts, warranties, notices and

13  signs contain provisions which clearly violate the rights of consumers," and "[e]ven though these

14  provisions are legally invalid or unenforceable, their very inclusion in a contract, warranty,

15  notice or sign deceives a consumer into thinking that they are enforceable and for this reason the

16  consumer often fails to enforce his rights." *Shelton v. Restaurant.com*, 214 N.J. 491, 431 (2013)

17  (citing Sponsor's Statement, Statement to Assembly Bill No. 1660 (May 1, 1980) ("Sponsor's

18  Statement")).

19      The public policy behind protecting consumers is so strong that the legislature expressly

20  included a "no waiver" clause in the statute itself. *See* N.J.S. § 56:12-16 ("No consumer contract,

21  warranty, notice or sign . . . shall contain any provision by which the consumer waives his rights

22

23

24

25  P'S OPP. TO MOT. TO DISMISS          - 5 -
    No. C16-1667 RSM

26

1    under this act. Any such provision shall be null and void.").[5]

2         When legislatures evince such strong public policies in support of their statutes, courts

3    regularly find that choice-of-law clauses violating anti-waiver provisions would be contrary to

4    public policy. *See Doe 1 v. AOL LLC*, 552 F.3d 1077, 1084 (9th Cir. 2009) (holding that the

5    enforcement of a forum selection clause, together with the choice-of-law provision, violates the

6    anti-waiver provision of California's Consumer Legal Remedies Act); *Wright-Moore Corp. v.*

7    *Ricoh Corp.*, 908 F.2d 128, 134 (7th Cir. 1990) (concluding that the enforcement of a choice-of-

8    law provision would be contrary to Indiana's public policy because the Indiana franchise law

9    prohibited waiver); *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 608 (4th

10   Cir. 2004) ("[T]he presence of an antiwaiver provision…suggests the importance the legislature

11   attached to the statute.").

12        If that principle did not clearly provide the public policy behind TCCWNA (it does), the

13   fact that the statute provides any consumer who has been offered a contract with unlawful

14   provisions the right to institute a civil action for statutory or actual damages and injunctive relief

15   should. *See* N.J.S.A. § 56:12-17; *see also New Jersey Dental Ass'n v. Metro. Life Ins. Co.,* 424

16   N.J. Super. 160, 165 (App. Div. 2012), *overturned due to legislative action* ("Although the terms

17   of a contract are generally left to the parties, courts declare contracts invalid if they violate

18   statutes."); *Gamble v. Connolly*, 399 N.J. Super. 130, 144 (Law. Div. 2007) ("Here the contract

19   in question transgresses a statute, N.J.S.A. 46:8-10, and is therefore, disruptive of public policy,

20   at odds with the public interest and deleterious to the common good.").

21

22   _____

23   [5]    Of course, if the choice-of-law provision is enforced, Plaintiff will have effectively
     waived his rights pursuant to TCCWNA. Since the statute prevents such waiver, the choice-of-

24   law provision "shall be null and void." *See* N.J.S.A. § 56:12-16.

25   P'S OPP. TO MOT. TO DISMISS                    - 6 -
     No. C16-1667 RSM

26

**LAW OFFICES OF**
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

Starbucks nevertheless argues that *New Jersey* public policy endorses applying Washington law to preclude *New Jersey* residents from pursuing a *New Jersey*-specific remedy for conduct that occurred in *New Jersey*. In particular, Starbucks argues that Washington's Consumer Protection Act ("CPA") supposedly "provides even greater protections than TCCWNA by applying to all 'unfair and deceptive acts and practices,' rather than only illegal or misleading terms in consumer transactions." (Mot. at 11.)

That New Jersey would approve using clauses buried in an adhesion contract to strip tens of thousands of its residents' statutory consumer rights is impossible to imagine. *See, e.g., Networld Comm'n, Corp. v. Croatia Airlines, D.D.*, No. 13-cv-4770, 2014 WL 4662223, at *3 (D.N.J. Sept. 18, 2015) (refusing to enforce Croatian choice-of-law provision when its application would be contrary to New Jersey's public policy of protecting salespeople). That is especially true here for a number of reasons.

### 1. Application of Washington law would deprive the entire New Jersey class of the relief TCWNNA was enacted to provide.

First, Washington law **would not provide relief** to Brahamsha and the putative class, whereas TCCWNA was designed and enacted to provide them heightened protections. Yet Starbucks argues that the CPA is consistent with the New Jersey policy promoted by TCCWNA and will provide even greater relief.

Starbucks ignores that New Jersey has its own version of a consumer protection statute—the New Jersey Consumer Fraud Act ("NJCFA")—which provides many, if not most or all, of the remedies provided by the CPA. For instance, like the CPA, the NJCFA is designed to address "sharp practices and dealings . . . whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kinds of selling or advertising

P'S OPP. TO MOT. TO DISMISS
No. C16-1667 RSM

- 7 -

**Law Offices of
Clifford A. Cantor, P.C.**
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

1  practices." *Crozier v. Johnson & Johnson Consumer Companies, Inc.*, 901 F. Supp. 2d 494, 505

2  (D.N.J. 2012). The NJCFA, like the CPA, allows for the recovery of treble damages. *Gonzalez v.*

3  *Wilshire Credit Corp.*, 207 N.J. 557, 576 (2011) (holding that the CFA allows any person who

4  suffers any ascertainable loss to bring a lawsuit seeking treble damages).

5       There is no question that the New Jersey legislature enacted TCCWNA to **further** protect

6  New Jersey consumers from additional, specific activity that general consumer protection laws

7  like the CPA and NJCFA do not cover.[6] Thus, application of the CPA would not go far enough

8  in this instance and would strip Brahamsha and the putative New Jersey class of the New Jersey

9  rights they seek to enforce under TCCWNA.

10      When application of a state law would strip consumers of rights to which they are

11 entitled, courts regularly refuse to apply them. *See, e.g., McKee v. AT & T Corp.*, 164 Wash. 2d

12 372, 386 (Wash. 2d 2008) (applying Washington law over New York law because New York

13 law would have forbidden the consumer class action); *Khoday v. Symantec Corp.*, No. CIV. 11-

14 180, 2014 WL 1281600, at *20 (D. Minn. Mar. 13, 2014) ("Courts typically refuse to apply

15 choice of law provisions to consumer protection claims when application of the choice of law

16 clause will limit or deprive the consumer of a remedy provided by his or her home state.");

17 *Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031, 1038, 1042 (N.D. Cal. 2010) (refusing

18 to enforce a Maryland choice of law clause which had "the effect of waiving legal protections

19 that are afforded by California law," specifically the ability to recover punitive damages); *Millett*

20

---

21  [6]    Specifically, TCCWNA was enacted to protect against the harm resulting from "too
many consumer contracts, warranties, notices and signs contain[ing] provisions which clearly
22 violate the rights of consumers," and "[e]ven though these provisions are legally invalid or
unenforceable, their very inclusion in a contract, warranty, notice or sign deceives a consumer
23 into thinking that they are enforceable and for this reason the consumer often fails to enforce his
rights." *Shelton*, 214 N.J. at 431 (citing Sponsor's Statement).
24

25  P'S OPP. TO MOT. TO DISMISS            - 8 -
    No. C16-1667 RSM

26

*v. Truelink, Inc.,* Civ. No. 05–599, 2006 WL 2583100, at *4 (D. Del. Sept. 7, 2006) (refusing to enforce a Delaware choice of law clause that would insulate defendant "from liability against all statutory consumer fraud claims" for conduct occurring outside of Delaware, in violation of Kansas public policy).

New Jersey courts routinely reject choice-of-law clauses that would deprive a New Jersey plaintiff of a remedy otherwise available under New Jersey law. *See Kubis & Perszyk Associates, Inc. v. Sun Microsystems, Inc.*, 146 N.J. 176, 192 (N.J. 1996) (applying New Jersey law over California law where it was contrary to the basic legislative objectives of the Franchise Act and a fundamental New Jersey public policy); *Param Petroleum Corp. v. Commerce & Indus. Ins. Co.*, 296 N.J. Super. 164, 171 (N.J. App. 1997) (applying New Jersey law over New York law in insurance contracts when the insured risk is in New Jersey).

Washington courts likewise protect their own residents when the application of other states' provisions would violate Washington's public policies. *See McKee*, 164 Wash. 2d at 386 (2008) (applying Washington law over New York law because "Washington's interest in protecting large classes of consumers materially outweighs New York's limited interest in this matter.").

Relevant here, when a New Jersey court transferred a TCWNNA case to another state, a judge specifically recognized that TCCWNA protections are not afforded by other states' laws and urged the transferee court to apply New Jersey law to give residents "the full benefit of [the] state's consumer laws." *Carfaro v. Blue Haven Pools Ne., Inc.*, No. A-2803-13T3, 2015 WL 1980705, at *9 (N.J. Super. Ct. App. Div. May 5, 2015) (Sabatino, J. concurring).

Accordingly, New Jersey law controls.

P'S OPP. TO MOT. TO DISMISS
No. C16-1667 RSM

- 9 -

**LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

2.      **Application of Washington law would waive New Jersey citizens'**
**substantive rights through an adhesion contract.**

Next, New Jersey's refusal to waive its citizens' substantive rights by including the no-waiver provision deserves particular weight, as TCCWNA was enacted to protect against these sorts of contractual terms in this exact context.

Allowing Starbucks to use adhesion contracts to sidestep TCCWNA's unwaivable protections would unquestionably undercut New Jersey's fundamental public policy protecting its consumers (which, unlike contracts between sophisticated parties, lends itself to even more consumer disadvantages), and cause substantial injustice to hundreds of thousands of New Jersey residents. *Riensche v. Cingular Wireless, LLC*, No. C06-1325, 2006 WL 3827477, at *6 (W.D. Wash. Dec. 27, 2006) (finding that contracts of adhesion weigh in favor of procedural unconscionability because they are not negotiated at arm's length between equals).

The Starbucks Application's terms of use does not contain a "severability" provision which, if included, usually allows a contract to remain in effect even if a provision is found to be void. Thus, because TCCWNA affords this Court the right to void both unlawful provisions and the entire contract, *see* N.J.S.A. § 56:12-17, the provisions at issue here render the entire contract void, including the choice of law clause. *See Gandee v. LDL Freedom Enterprises, Inc.*, 176 Wash. 2d 598, 603 (Wn. 2d 2013) (finding severance is the usual remedy for unconscionable terms, but when the terms "pervade," courts declare the entire agreement void.)

3.      **The cases cited by Starbucks require no different result.**

Starbucks cites a number of cases in its argument to the contrary, but those cases require no different result. Starbucks's authority largely presents the Court with choosing between two states offering analogous (if somewhat different) relief—not a situation where, as here, relief is

P'S OPP. TO MOT. TO DISMISS
No. C16-1667 RSM                                    - 10 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

completely absent in one forum. *See Schunkewitz v. Prudential Sec. Inc.*, 99 F. App'x 353, 355

(3d Cir. 2004) (stating "both the N.Y. and N.J. statutory wage laws ensure that employees

receive the full amount of their earned compensation."); *Karpenski v. Am. Gen. Life Companies,*

*LLC*, 999 F. Supp. 2d 1218, 1230 (W.D. Wash. 2014), *reconsideration denied*, 999 F. Supp. 2d

1235 (W.D. Wash. 2014) (holding that the "Court is not persuaded that a conflict exists between

the applicable Virginia and Washington attachment statutes."). Its other cases fare no better. *See*

*Erwin v. Cotter Health Centers*, 161 Wash. 2d 676, 698–99 (2007) (holding a conflict existed

merely because the plaintiff possessed a professional license in Washington state only, making

his actions potentially illegal under California law); *Thornell v. Seattle Serv. Bureau, Inc.,* No.

14-cv-1601, 2016 WL 3227954, at *4 (W.D. Wash. June 13, 2016) (holding that a choice-of-law

provision had no impact on the court's decision and that because Texas had a more significant

relationship to plaintiff's claims, Texas law applied).

      In the end, New Jersey's public policy mandates that New Jersey—not Washington—law

must apply.

      **B.    New Jersey has a materially greater interest in this action than Washington.**

      This Court must also apply New Jersey law because Brahamsha and the entire putative

class here consist of **New Jersey** residents suing under a **New Jersey** statute for conduct and

statutory violations that occurred in **New Jersey**. Under these circumstances, courts in the Ninth

Circuit—and Washington in particular—regularly apply plaintiffs' home state laws over the law

identified in a given contract because of those states' materially greater interest in the claims.

*See, e.g., Kammerer v. Western Gear Corp.*, 96 Wash. 2d 416, 423 (Wn. 2d 1981) (applying

California law to plaintiffs' action against Washington corporation because plaintiffs were

residents of and the most significant relationships and conduct were accomplished in California);

P'S OPP. TO MOT. TO DISMISS
No. C16-1667 RSM

- 11 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

1   *Bryant v. Wyeth*, 879 F. Supp. 2d 1214, 1222-23 (W.D. Wash. 2012) (holding that the

2   "significant factor in *Kammerer* was the jurisdiction in which the bad behavior—

3   misrepresentation—occurred."); *Kwan v. Clearwire Corp.*, No. C09-1392, 2012 WL 32380, at

4   *6 (W.D. Wash. Jan. 3, 2012) (applying Washington law for one consumer and Texas law for

5   another based on the residence of the consumer, the place of contracting, the place of negotiation

6   (what little there was), the place of performance, the location of the subject matter, and the

7   residence of one of the parties—the consumer"); *McKee*, 164 Wash. 2d at 385-86 (applying

8   Washington over New York law because New York's only tie to the litigation was the

9   Defendant's state of incorporation when Washington was the place of contracting, the place of

10  negotiation (what little there was), the place of performance, the location of the subject matter,

11  and the residence of one of the parties); *Savetsky v. Pre-Paid Legal Servs., Inc.*, No. 14-cv-3514,

12  2015 WL 4593744, at *7 (N.D. Cal. July 30, 2015) (citing *Pokorny v. Quixtar*, 601 F.3d 987 (9th

13  Cir. 2009)) (same); *Ruiz v. Affinity Logistics*, 667 F.3d 1318, 1324-25 (9th Cir. 2012) (finding

14  California law applied despite Georgia choice-of-law clause and Georgia defendant); *Ostreicher*

15  *v. Alienware Corp.*, 502 F. Supp. 2d 1061, 1069 (N.D. Cal. 2007) (finding California had a

16  "materially greater interest" where California residents were suing under California law for

17  defective products shipped into California).

18          Here, Brahamsha and the putative class members are New Jersey residents seeking relief

19  under New Jersey's statutory protections for injuries suffered in New Jersey, with no relevant

20  connection to Washington beyond interacting with a company headquartered there (but doing

21  business everywhere, including New Jersey). New Jersey thus has a materially greater interest in

22  applying its own laws.

23          Starbucks nevertheless argues that Washington's interests in protecting its businesses and

24

25  P'S OPP. TO MOT. TO DISMISS
    No. C16-1667 RSM

26

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

ensuring predictably in enforcing the choice-of-law clause trumps New Jersey's interest in its

citizens' rights. That argument ignores that New Jersey's interest is fundamental, specifically

articulated by statute, and shielded by courts.

Washington must defer under these circumstances. If Starbucks's argument were to

prevail, Washington law would always apply in cases naming a Washington defendant. *See*

*Kammerer*, 96 Wash.2d at 423 (applying California law to Plaintiffs' action against Washington

corporation); *see also Thornell*, 2016 WL 3227954, at *4 (applying Texas law to a claim alleging

deceptive trade practices by a Washington corporation). Additionally, "[i]f the chosen state's

interest in enforcing a choice-of-law provision alone were enough to trump the interest of the

non-chosen state, Section 187 would largely be a nullity." *In re Facebook Biometric Info.*

*Privacy Litig.*, No. 15-cv-03747, 2016 WL 2593853, at *11 (N.D. Cal. May 5, 2016) (finding

that "while California 'certainly has a significant general interest in enforcing contracts

executed…by its citizens,' Illinois has 'a substantial, case-specific interest in protecting its

resident[s]…from losing statutory protections.").

Thus, New Jersey has a materially greater interest in having its law applied than

Washington. *See Johnson v. Spider Staging Corp.*, 87 Wash. 2d 577, 583 (1976) ("When one of

two states related to a case has a legitimate interest in the application of its law and the other

state has no such interest, clearly the interested state's law should apply.").

C.     **The Court should apply New Jersey law under a basic choice-of-law analysis.**

When "the law of the chosen state would be contrary to a fundamental policy of a state

which has a materially greater interest than the chosen state in the determination of the particular

issue," Restatement (Second) of Conflicts § 187(2)(b), courts consider "(a) the place of

contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Id.* at § 188(b)(2).

Under this analysis, New Jersey law applies. Brahamsha and all putative class members (a) entered into the contracts in New Jersey, (b) agreed to the terms of use in New Jersey, (c) used their Applications in New Jersey, (d) made their purchases in New Jersey, and (e) live in New Jersey. *See Paniagua Grp., Inc. v. Hosp. Specialists, LLC*, No. 11-6003, 2016 WL 1725934, at *3 (D.N.J. Apr. 28, 2016) ("[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state will apply."); *Lebegern v. Forman*, 471 F.3d 424, 431 (3d Cir. 2006) (same). The only party that isn't based in New Jersey is Starbucks—but it has more than fifty stores located there. To argue that New Jersey residents would have to apply a cross-the-country law regarding their morning or afternoon coffee purchases in New Jersey defies common sense. Thus, New Jersey law applies.

## II.     Starbucks' Terms of Use are Governed by TCCWNA.

New Jersey law applies, and Brahamsha sufficiently states a claim under Sections 15 and 16 of TCCWNA.

Both sections are collectively intended to "prevent deceptive practices in consumer contracts. However, each section affords different protections and may arise from different harms." *Kendall v. Cubesmart L.P.*, No. CV156098, 2016 WL 1597245, at *3 (D.N.J. Apr. 21, 2016) (quoting *Walters v. Dream Cars Nat'l, LLC*, No. BER-L-9571-14, 2016 WL 890783, at *5 (N.J. Super. L. Mar. 7, 2016)).

To state a claim under Section 15, a plaintiff must allege that "(1) the plaintiff is a consumer; (2) the defendant is a seller; (3) the 'seller offers a consumer a contract' or gives or displays any written notice, or sign; and (4) the contract, notice or sign includes a provision that

P'S OPP. TO MOT. TO DISMISS
No. C16-1667 RSM

- 14 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

'violate[s] any legal right of a consumer' or responsibility of a seller." *Watkins v. DineEquity, Inc.*, 591 F. App'x 132, 135 (3d Cir. 2014). Section 16 requires that a plaintiff allege (1) a consumer contract; (2) which states that any of its provisions may be void, unenforceable, or inapplicable in some jurisdictions; and (3) that the consumer contract, notice, or sign fails to specify which provisions are or are not void, unenforceable, or inapplicable in New Jersey. *Kendall*, 2016 WL 1597245, at *10.

Starbucks argues that Brahamsha failed to state a claim because Brahamsha is not a consumer, did not enter into a consumer contract, and Brahamsha was not aggrieved pursuant to Section 17.[7] (Dkt. 19, at 12-14). The text of the statute, its legislative history, and previous judicial interpretation show those arguments lack merit.

### C.   Brahamsha is a "consumer" and entered into a "consumer contract."

First, Starbucks argues that Brahamsha is not a consumer and that he did not enter into a consumer contract because he "does not allege that he purchased products at Starbucks *using the mobile application*" and "he did not purchase the mobile application." (Mot. at 12.) Both arguments quickly fail.

The first argument is simply inaccurate. Brahamsha alleges that he "proceeded to use the Starbucks mobile application *while purchasing food and beverages from Starbucks' retail coffee shops*." (Complaint, Dkt. 1-1, at ¶ 36 (emphasis added).) He also states that he "repeatedly used [the] mobile application, including on dozens of occasions in 2016 alone." (*Id.*, at ¶ 34.)

It is perplexing that Starbucks argues Brahamsha didn't plead that he used the Application. Because Brahamsha made purchases (which were undoubtedly for personal, family

---

[7]   Notably, Starbucks does not argue that its terms of use comply with TCCWNA. Its focus, instead, is whether Brahamsha was damaged by its inferably admitted violations.

**LAW OFFICES OF**
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

or household purposes) using the Application, *see* N.J.S. §56:12-15, he is a "consumer" pursuant to Section 15.

Defendant's second argument—that Brahamsha is not a consumer and that he did not enter into a consumer contract because he did not purchase the Application—creates a distinction without a difference. (Mot. at 12-13.) First, Section 15 "establishes liability whenever a seller **offers** a consumer a contract, the provisions of which violate any legal right of a consumer." *Kendall*, 2016 WL 1597245, at *4 (emphasis added); N.J.S. § 56:12-15 ("No seller … shall … **offer** to any consumer or prospective consumer …") (emphasis added).

A violation of TCCWNA, therefore, occurs upon the mere offering of a "consumer contract" to a consumer or prospective consumer; a plaintiff need not actually pay for anything to have a claim. *See* N.J.S. § 56:12-15; *see also United Consumer Fin. Services Co. v. Carbo*, 410 N.J. Super. 280, 306 (N.J. App. 2009) ("The act of **offering** a consumer contract that violates a legal right of a consumer under the law is sufficient to establish a violation of [TCCWNA].") (emphasis added); *Johnson v. Wynn's Extended Care, Inc.*, 635 F. App'x 59, 60 (3d Cir. 2015) ("To find a violation of the TCCWNA, Johnson had to allege that the service contract **presented** to her by Wynn 'include[d] any provision that violates any clearly established legal right of a consumer . . . as established by State or Federal law.'") (quoting N.J.S.A. § 56:12-15) (emphasis added); *Shah v. Am. Express Co.*, No. 09-622, 2009 WL 3234594, at *3 (D.N.J. Sept. 30, 2009) ("TCCWNA creates a violation where a creditor in the course of its business **offers** a consumer or prospective consumer any notice which violates any federal or state law provisions.") (emphasis added); *Barows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 362 (D.N.J. 2006) (TCCWNA "can be violated if a contract or notice simply contains a provision prohibited by state or federal law, and it provides a remedy even if plaintiff has not suffered any actual

P'S OPP. TO MOT. TO DISMISS
No. C16-1667 RSM

- 16 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

damages."). A consumer contract "includes writings required to complete the consumer

transaction." *Shelton*, 214 N.J. at 438.

Starbucks offered its Application's unlawful terms of use on a take-it-or-leave-it basis,

which Brahamsha and all putative class members "agreed to" upon download. They supposedly

accepted the terms when they used the Application to purchase products at Starbucks locations.

Thus, Starbucks required its terms of use for Brahamsha and the class to make purchases using

the Application and, therefore, it constitute a consumer contract.[8] *Id.*

### B.      Brahamsha **is an "aggrieved consumer."**

Finally, Brahamsha is also an "aggrieved consumer" under TCCWNA. TCCWNA was

enacted to prevent the use of "deceptive provisions in consumer contracts that clearly violate the

right of the consumer and remediate the harms caused by the inclusion of confusing or unlawful

terms." *Walters*, 2016 WL 890783, at *6 (citing Sponsor's Statement). Section 17 of TCCWNA

requires that "any person who violates this act shall be liable to the aggrieved consumer for a

civil penalty of not less than $100.00 or for actual damages, or both . . . . " N.J.S.A. §56:12-17.

Although not defined in the statute, courts interpreting TCCWNA have concluded that to

be aggrieved, an individual must establish that the provision at issue "is or may be void,

unenforceable or inapplicable in New Jersey." *See Greenberg v. Mahwah Sales and Service, Inc.*,

---

[8]      Here, a look at how the Application is used in reality provides insight into Defendant's
arguments. The primary purposes of the Application are to allow individuals to order and pay for
their drinks and take part in the Starbucks Rewards™ program. (Dkt. 19, at 3.) The former
allows individuals to register their cards, add money to their accounts, and order and pay within
the Application. The more individuals paid using the Application, the more rewards points they
accrued to receive free drinks and other in-store perks as part of the Rewards program. Thus, in
order to get the most of out the program, individuals needed to actually patronize the business—
which Brahamsha and the putative class did. Thus, there can be no question that they are
consumers who entered into consumer contracts through download and use of the Application.

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

2016 WL 193485, at *5, *9 (N.J. Super. L. Jan. 8, 2016) (holding that to be aggrieved one must allege "cognizable violations under applicable New Jersey law").

Importantly, because a consumer may elect whether he/she wants to recover statutory damages or actual damages, under New Jersey law the "TCCWNA provides a remedy **even if the consumer has not suffered any actual damages**." *Walters*, 2016 WL 890783, at *6 (emphasis added); *Barows*, 465 F. Supp. 2d at 362 (recognizing that TCCWNA "provides a remedy even if a plaintiff has not suffered any actual damages.").

To recover statutory damages, the consumer only needs to prove a cognizable violation under TCCWNA—not that he or she was damaged monetarily by the conduct. *Id.*; *see also McGarvey v. Penske Automotive Grp., Inc.*, 639 F. Supp. 2d 450, 458 (D.N.J. 2009), *reconsidered on other grounds*, No. CIV. 08-5610, 2010 WL 1379967 (D.N.J. Mar. 29, 2010) (recognizing TCCWNA "can be violated if a contract . . . simply contains a provision prohibited by state or federal law, and it provides a remedy even if a plaintiff has not suffered any actual damages.") (quoting *Barows*, 465 F. Supp. 2d at 362). This is made clear by the fact that a bill was just introduced in New Jersey that seeks to modify the statute to include language that requires an "ascertainable loss" from class members—showing no ascertainable loss is actually required now. *See* 2016 New Jersey S.B. 2785, 217th Leg., 1st Ann. Sess. (2016), https://legiscan.com/NJ/text/S2785/id/1433965.

Brahamsha plausibly pleads that Starbucks violated multiple provisions of TCCWNA and therefore adequately alleges that he is an "aggrieved consumer" under the statute.

First, Brahamsha is an "aggrieved consumer" because Starbucks violated Section 15 of TCCWNA, which prohibits a "seller  . . .  [to] offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty,

1   notice or sign . . . which includes any provision that violates any clearly established legal right of

2   a consumer or responsibility of a seller . . . at the time the offer is made or the consumer contract

3   is signed or the warranty, notice or sign is given or displayed." *See Walters*, 2016 WL 890783, at

4   *5 (citing N.J.S.A. § 56:12-15).

5     Brahamsha is aggrieved because the terms of use "contain pre-injury releases that . . .

6   would forbid seeking any redress for certain intentional injuries." (Dkt. 1-1, at ¶ 34.)

7     Starbucks also seeks to improperly absolve itself of all potential liability in its terms of

8   use by stating that "IN NO EVENT SHALL STARBUCKS (A) BE LIABLE TO THE USER

9   WITH RESPECT TO USE OF THE APPLICATION," (*id.* at 7), even though it has long been "a

10   settled and invariable principle, that every right, when withheld, must have a remedy, and every

11   injury its proper redress." *Marbury v. Madison*, 5 U.S. 137, 147 (1803). Further, "[a]n agreement

12   containing a pre-injury release from liability for intentional or reckless conduct also is plainly

13   inconsistent with public policy" in New Jersey. *Stelluti v. Casapenn Enterprises, LLC*, 203 N.J.

14   286, 303 (2010). Not surprisingly, then, New Jersey courts find these exculpatory clauses to be

15   unlawful. *See Kendall*, 2016 WL 1597245, at *5 (holding it was a violation where the clause

16   sought to release defendants for personal injury claims "arising from any cause whatsoever . . .

17   regardless of whether such loss or damage is caused by the intentional or negligent acts or

18   omissions"); *Martinez-Santiago v. Pub. Storage*, 38 F. Supp. 3d 500, 514 (D.N.J. 2014) (same).

19     These are exactly the types of contractual provisions the New Jersey legislature intended

20   to target in passing TCCWNA. *See Walters*, 2016 WL 890783 at *5 (stating the "Legislature

21   intended to target contractual provisions that obligate the consumer to assume all rights and

22   responsibilities, and to defend, indemnify, and hold harmless the seller of all liability.").

23

24

25   P'S OPP. TO MOT. TO DISMISS

        - 19 -

26   No. C16-1667 RSM

Finally, in direct contradiction to the NJCFA's mandatory imposition of trebled actual damages and attorneys' fees, the Application's terms of use limit consumers to the "sole remedy" of ceasing use of the Application. (Dkt. 1-1, at ¶ 25.) Accordingly, Brahamsha is an "aggrieved consumer" pursuant to Section 15.

Brahamsha is also an "aggrieved consumer" under Section 16, which provides that "[n]o consumer contract, warranty, notice or sign, as provided for in this act, shall contain any provision by which the consumer waives his rights under this act," N.J.S.A. § 56:12-16, and that "[n]o consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable *in some jurisdictions* without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey. . . ." *Id*. Therefore, "TCCWNA obligates the seller to explain differences in the consumer's rights or responsibilities that may exist among jurisdictions, including New Jersey, to ensure that a consumer does not unintentionally, unknowingly, or inadvertently relinquish or fail to exercise his or her rights or remedies." W*alters*, 2016 WL 890783, at *5. If a contract does not "specify how [its] provisions are void, unenforceable, or inapplicable in New Jersey," *id.* at *6, a consumer who brings a claim pursuant to Section 16 is "aggrieved."

Here, Brahamsha alleges that Starbucks's terms of use contain provisions that state, "in a general, non-particularized fashion that they are void, inapplicable, or unenforceable in some jurisdictions, without specifying which provisions are void, inapplicable or unenforceable in New Jersey." *Id*. at *8. By way of example, the terms of use state that "[s]ome jurisdictions do not allow the limitation of liability in contracts with consumers, so some or all of these limitations of liability may not apply to you." (Dkt. 1-1, at Fig. 3.)

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax  (425) 732-3752

As New Jersey courts have held, though, if Section 16 means anything, "it must mean that the . . . agreement needs to specify which provisions are unenforceable under New Jersey law." *Martinez-Santiago*, 38 F. Supp. 3d at 511 ("[b]ecause Plaintiff alleges that a provision of the lease agreement is unenforceable under the TCCWNA . . . Plaintiff also has stated a claim under N.J.S.A. §56:12-16 in the absence of any indication of which provisions are enforceable and which are not under New Jersey law."); *Gomez v. Extra Space Storage, Inc.*, No. CIV. 13-0929, 2015 WL 1472263, at *7 (D.N.J. Mar. 31, 2015) (holding that savings provisions that imply that they may be invalid in New Jersey violate TCCWNA). Accordingly, Brahamsha is "aggrieved" pursuant to Section 16.

Despite these violations, Starbucks attempts to distort what it means to be "aggrieved" and why Brahamsha does not meet that standard. *See Russell v. Croscill Home, LLC*, No. 16-1190(PGS) (D.N.J. Oct. 11, 2016) (*see* Mot. at 14) (determining that TCCWNA claimant lacked Article III standing and plaintiff was not an aggrieved consumer because he did not allege he viewed the illegal terms and conditions on defendant's website)[9]; *Wenger v. Bob's Disc.*

---

[9]      Defendant Starbucks removed this action to federal court and thus affirmatively invoked federal jurisdiction. (Dkt. 1.) While Starbucks does not directly take the position that Plaintiff lacks Article III standing in its motion, Starbucks does argue that Brahamsha is not "aggrieved." (Mot. at 15.) To the extent Starbucks intends to suggest that, by not being "aggrieved" Brahamsha does not have injury-in-fact standing, Starbucks's position is wholly inconsistent with its removal to federal court. *See Mocek v. AllSaints USA Ltd.*, No. 16-cv-8484, Dkt. 31, at 9 (N.D. Ill. Dec. 7, 2016). A defendant cannot "have it both ways by asserting, then immediately disavowing, federal jurisdiction, apparently in hopes of achieving outright dismissal, with prejudice, rather than the remand required by [28 U.S.C.] § 1447(c)." *Id.* When defendants take such a confusing stance, courts are **required** to remand the action to state court, *see* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject-matter jurisdiction, the case shall be remanded."), and often award fees and costs to the plaintiff. *See Mocek*, No. 16-cv-8484, Dkt. 31 at 10 (awarding $58,112.50 to plaintiff's counsel for fees associated with motion to remand). Thus, if it is, in fact, Starbucks's position (or the Court otherwise holds) that Brahamsha lacks Article III standing and thus there is no federal

---

P'S OPP. TO MOT. TO DISMISS
No. C16-1667 RSM

- 21 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

*Furniture, Inc.*, No. 14-7707, 15-1826 (D.N.J. Feb. 29, 2016) (*see* Mot. at 14) (holding the defendant did not violate TCCWNA because defendant attempted to conform with the law but, among other things, failed to provide a date or use bold font in certain places in the contract).

Here, Brahamsha agreed to the terms of use that he did not know are illegal. Starbucks does not even attempt to argue that its Terms of Use are in the spirit of TCCWNA—instead arguing that the statute would provide Brahamsha a windfall. Starbucks's reliance on those cases is therefore misguided.

## CONCLUSION

For the reasons stated, Plaintiff Brahamsha requests that the Court enter an Order (i) denying Defendant's motion to dismiss, (ii) ordering Defendant to answer Brahamsha's class-action complaint, and (iii) awarding such other and further relief as the Court deems reasonable and just.

Dated: December 12, 2016

Respectfully submitted,

*s/  Cliff Cantor*
By: Cliff Cantor, WSBA # 17893
LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074
Tel:    425-868-7813
Fax:    425-732-3752
Email: cliff.cantor@outlook.com

Benjamin H. Richman
        [application filed for admission pro hac vice]

jurisdiction over Brahamsha's claim, the case may not be dismissed with prejudice, but rather, must be remanded to state court in New Jersey. *See Bloom v. Barry*, 755 F.2d 356, 358 (3d Cir. 1985) ("'Remand' means 'send back.' It does not mean 'send elsewhere.' The only remand contemplated by the removal statute is a remand 'to the State court from which it was removed.'").

P'S OPP. TO MOT. TO DISMISS
No. C16-1667 RSM

- 22 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752

Courtney C. Booth
Jacob B. Wright
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel:     312.589.6370
Fax:     312.589.6378
Email: brichman@edelson.com
          cbooth@edelson.com
          jwright@edelson.com

Attorneys for Plaintiff Alan Brahamsha

Certificate of Service

I certify that, on the date stamped above, I caused this document to be filed with the Clerk of the Court via the CM/ECF system, which will email notice of filing to counsel of record for all parties.

*s/ Cliff Cantor*, WSBA # 17893

P'S OPP. TO MOT. TO DISMISS
No. C16-1667 RSM
- 23 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074
Tel (425) 868-7813 • Fax (425) 732-3752